Good afternoon, may it please the court. My name is Jessica Reams of the North Rose Immigrant Rights Project on behalf of Mr. Mario Jaimes-Cardenas. I'd like to endeavor to reserve three minutes of my time for rebuttal and I'll go ahead and watch the clock for that. Mr. Jaimes, a father of four and a survivor of domestic violence, was convicted of possession of methamphetamine in Oregon in 2018. A conviction that was the direct result of the abuse that he survived at the Despite Mr. Jaimes' victimization, the immigration judge denied his application for special work. Finding that the waiver at 8 U.S.C. 1229 BB5 cannot waive substance abuse crimes. This finding was erroneous. Mr. Jaimes' argument to the court has three main points today that support the correct and broad interpretation of section 1229 BB5. First, that the language of the statute supports a broad reading of the waiver. Second, that other tools of statutory interpretation also demonstrate the petitioner's reading of the waiver's text is correct. And finally, that the ameliorative intent of the Violence Against Women Act compels a broad reading of the waiver. Before you get into more statutory construction, what is the status of Jaimes' request for post-conviction relief from Oregon for the state-controlled substance abuse pursuant to Kentucky versus to the Yes, your honor. So the PCR, the original PCR motion was denied. However, Mr. Jaimes is currently represented by O'Connor and Weber and they filed a notice of appeal on that issue. The opening brief is currently due in August 31, 2020. So the status of this, would this be a, is it a habeas proceeding? What is it? Post-conviction relief, right? Post-conviction relief, your honor. Right, okay. And under Kentucky v. Padillas, as you stated. Thank you. The issue before the court today concerns two sections of law, 8 U.S.C. 1229 BB5 and 8 U.S.C. 1227 A7 and the interplay between these two. Counsel? Yes. Excuse me, I hate to interrupt you, pardon me. So given what you've just described about the petition for relief, why shouldn't we defer submission of this case until that issue is resolved? Your honor, this issue is separate and apart. And while Mr. Jaimes' case would be made easier by the grant of a, by a PCR grant, the issue before the court today is whether or not this, the waiver contemplated at 1229 BB5 would waive his substance abuse conviction regardless of the, regardless of the substance abuse conviction being there or not. And so the issue before the court is very much has to do with the waiver and not whether or not he can be granted post-conviction relief. I understand. Thank you. Absolutely. So going back to these two statutes that we're dealing with, I want to start by looking into 1227 A7. So the domestic violence waiver at 1227 A7 is available to individuals with lawful permanent residence status as a standalone waiver for the deportability grounds listed at 1227 A2E. The waiver does not require an application and is a defense in deportation proceedings. By contrast, the waiver at 1229 BB5 is limited to applications for is functionally divided into two parts. What crimes may be waived and under what circumstances. 1229 BB5 in turn modifies and expands the scope of the waivement of crimes, providing the authority to waive the full character requirement along with a large swath of inadmissibility and deportability grounds, including controlled substance conviction. And it does this by cross-referencing, and I quote, paragraphs 1B, 1C, and 2A4. This cross-reference renders the statutory text plain and unambiguous. The waiver should be read broadly to include all enumerated offenses cross-referenced. More pointedly, the waiver, while bound by the same circumstantial limitations, is not limited to the crimes listed at 1227 A7, but instead the crimes cross-referenced in 1229 BB5. The text of 1229 B1C further illuminates Congress's intent in the plain language. Paragraph 1C, one of the three cross-reference sections of 1229 BB5, deals with the criminal bars to cancellation, specifically convictions, and I quote, under section 1182 A2, 1227 A2, or 1227 A3 of this title, subject to paragraph 5, end quote. Paragraph 5 refers to the waiver at issue today. Again, this cross-reference is obstructive. It grants express authority for an immigration judge to waive the bars cancellation listed at 1229 B1C, even if such a bar does not correspond to under 1227 A7. This reading is further supported by the Rule of Last Antecedent, wherein the limiting clause modifies only the noun or phrase that it immediately follows. Here, the limiting clause, subject to paragraph 5, must apply to the entire phrase, section 1182 A2, 1227 A2, or 1227 A3. Thus, Congress intended the clause subject to paragraph 5 to modify each of these sections, not just 1227 A2, as respondents suggest. It is particularly important to note the subsection put last in this string, which is 1227 A3, the section most proximate to the modifier itself. 1227 A3 lists affordability charges related to failure to change address, falsification of documents, false claims to citizenship, and document fraud. Had Congress intended paragraph 5 to apply only to crimes of domestic violence, they would not have made 1227 A3 subject to paragraph 5. Next, respondents' reading of the waiver would render parts of the scope of the waiver as defined at 1229 BB5 meaningless. That interpretation violates one of the cardinal rules of statutory interpretation. The court should interpret the text to ensure that where conflict exists between two provisions, they are interpreted in a way that gives meaning to both. This is evidenced by the inclusion of paragraph 1B in the plain text of 1229 BB5. What's your, counsel, what's your best case for having this panel conclude that 8 U.S.C. 1227 A7 includes drug offenses? Your honor, I believe that there are a few cases on point in this. However, the strongest would be versus Hernandez, and that is the case where this court ruled that the, or sorry, Locust Road versus Locust Approximate, where this court found that provisions under the Violence Against Women Act should be interpreted in an ameliorative fashion. And so here, we're talking about 1229 BB5, part of the Violence Against Women Act, created originally in 2000, but then this waiver that we're talking about here should take on the same force and be construed in an ameliorative fashion in order to lessen harsh results and consequences of immigration laws. Counselor, what about, counsel, you've done a great job of trying to explain these terribly complicated interlocking sections and clauses, but I just want you to comment and tell us why the Fifth Circuit was wrong in 2014 in Rodriguez Benitez versus Holder. Absolutely, and so the Fifth Circuit's case would represent a circuit split for the Ninth. However, the Fifth Circuit's analysis in did not address the plain language of 1229 BB5. It instead focused on the plain language of 1227 A7. And it also did not speak to the purpose of the Violence Against Women Act. So it basically assumed that 1229 BB5 was restrictive without giving any analysis to the plain text of 1229 BB5. Okay, so turning again to paragraph 1B, which is part of the plain text of 1229 BB5 or one of the cross-references. Before you get there, Judge Fischer has asked you about the Fifth Circuit case. Is there any other case that you believe offsets, argues, you know, basically counters the Fifth Circuit's analysis? Or does that stand alone from your perspective? It stands alone. The only other cases on point in other circuits would be the Eleventh Circuit case in Arevalo versus U.S. Attorney General. But that case really doesn't deal with the waiver right issue here. It instead deals with the waiver at Section 1182H, which is not part and parcel of the Violence Against Women Act. And so I think your honor is correct in the statement that there is no other case on point besides the Fifth Circuit case. If we were to disagree with the Fifth Circuit in a written opinion, it would create a circuit split, would it not? It would, your honor, yes. So going to this paragraph 1b, which references the good moral character requirements, defined at 1101 AFT, the important thing about this requirement is that it's sort of bifurcated into two parts. The first part is the enumerated statutory bars to good moral character, which is a list of crimes and conduct that would prevent someone from receiving a finding of good moral character. The other part is the catch-all provision, which is discretionary. It's important to note that within the enumerated crimes, you do not see one reference made to domestic violence or stalking crimes. And even though the government has argued that this could be a discretionary finding against good moral character, that's a legal fiction. There's no situation in which an immigration judge would both decide in their discretion that someone has a bar to good moral character and then turn that around and basically put a waiver into effect in their discretion to cure that. I'm almost out of time for the reserved part that I wanted. Do you want to save the balance of your time? You can. I just wanted to make one quick point and then I'll reserve the remainder. So again, the court's precedence in Lopez Barretta versus Holder and that the Violence Against Women Act should be applied in a military fashion. Mr. Jaime's story is the same story that Congress likely envisioned when creating special rule cancellation and the associated waiver issue. The abuse he suffered through cannot be described as anything less than extreme cruelty. So it's for these reasons that Mr. Jaime has asked the court to follow precedence by adopting an ameliorative reading, vacating the agency's decision, and remanding proceedings. So that Mr. Jaime is being considered for the relief that he deserves as a survivor of abuse. And I will reserve the rest of my time. Very well. Thank you. Ms. Juarez, we can't see you, but we're looking forward to your argument. So please proceed. Thank you, Your Honors. May it please the court, Anna Juarez, for the respondent, Attorney General. There's only one issue in this case, which is the domestic violence waiver, which waives only certain domestic violence grounds of removability, can also be applied to waive petitioner's controlled substance violation, which precludes his eligibility from the relief he seeks. Despite petitioner's claims, there's nothing in the statutory language that allows an immigration judge to apply a domestic violence waiver under 1227A7 to a ground of inadmissibility, such as a controlled substance violation that would otherwise bar an applicant from cancellation of removal. Here, petitioner notably doesn't dispute that his controlled substance conviction bars his eligibility. And he's not disputing that the domestic violence waiver under 8 U.S.C. 1227A7 only applies to the certain grounds of domestic violence that are enumerated in 1227A7 is very specific that it applies to 1227A2E that list domestic violence grounds. Petitioner's attempting to create an independent waiver out of 1227BB5. However, the specific language of that is the application of the domestic violence waiver authority and explicitly states that it's the authority under section 1227A7 may be applied to certain provisions in the cancellation of removal statutes. And Congress specifically used 1227A7, which is domestic violence waiver, instead of using other language that would waive other grounds of inadmissibility, such as controlled substance violation. While you're talking about cancellation of removal, can I ask you this? If you set aside whether the High Minister Cardenas has a chance to succeed, does the government concede that except for his controlled substance conviction, he would be able to seek cancellation of removal pursuant to the battered spouse exception in 1229BB284? That would be up to an immigration judge to decide. Right. And the agency found they pre-permitted the application finding that he was statutorily ineligible. But if this waiver applied to him, or if, you know, in post-conviction relief, he didn't have this conviction anymore, then it would need to go back to the agency to determine if he met the other requirements for cancellation of removal. Do you agree that at least statutorily, he could conceivably meet it, putting aside for a moment the controlled substance conviction? I don't have any reason to think not, but that's really not the stage that the agency would need to determine it. And they didn't go beyond that. Ms. Juarez, I asked opposing counsel about the Rodriguez case from the Fifth Circuit, and her response in part was, and you heard it, was that perhaps that opinion did more of a cursory evaluation, it didn't focus on the plain language. What's your response to that? It was a short paragraph addressing it, but I don't think that it is wrong at all. It based the analysis on the plain language of the statutes and found that there's just no support for an argument that a court should pull from 1227A7 a general authority to waive all crimes instead of specific authority described in 1227A7. So although the Fifth Circuit didn't go into the arguments that Petitioner is raising here, I don't think, I think the Fifth Circuit was correct in their analysis, but just based on the plain language, there's nothing in it that would create an independent waiver under 1229B5. Okay. Here, Petitioner spends a lot of time looking at the statute and asking the court to apply 1229B5 as an independent waiver to these different grounds of cancellation. Council notably didn't address the exception in special rule cancellation of removal, which is that 1229BB2C, and that waives grounds of, that applies only to the good moral character requirement in special rule cancellation of removal, and that is a broad waiver. Congress allows the attorney general to waive an act or conviction that was connected to an alien having been battered or subjected to extreme cruelty, and did not use the 1227A7 language that it used for the other provisions in cancellation of removal, which is the waiver that Petitioner needs for his ground of inadmissibility. And Congress is presumed to act purposefully when it includes an exception in one section of the statute, but omits it in another. And also to the extent that Petitioner's arguing that the purpose of a Violence Against Women Act is ameliorative, and that therefore the court should construe a 1229B5 as its own independent is without merit. Because the domestic violence waiver in 1227A7 waives specific domestic violence crimes, and it does the exact same thing in cancellation of removal. The special rule cancellation of removal gives other less restrictive immigration requirements to domestic violence victims short of continuous residence. They provided that special exception for good moral character for special cancellation of removal. And the domestic violence waiver applies to domestic violence crimes the same way that it does under 1227A7 to waive grounds of removability. So simply because it doesn't apply to his controlled substance offense, which his argument is that, you know, the police found drugs in his apartment, but they belong to his spouse who has been abusive. And so just because the domestic violence waiver does not apply to his conviction does not mean that it's meaningless or that VAW is not being satisfied by the domestic violence waiver. And as he noted, and this court has noted, his remedy for seeking relief to his claim that the drugs were not his are in post-conviction relief, which he has been pursuing. And the final, oh, go ahead. Um, the final point that I want to make is, sorry, sorry about that. Um, as your honors noted, there really isn't case law out there other than the Fifth Circuit case finding that the plain language just doesn't allow an independent broad waiver. Um, but as we cited in our brief, there's several cases involving the 1182H waiver, um, YNP by the board, Garcia-Mendez by this court, and Aravelo by the 11th circuit. And all of those cases involve special rule cancellation of removal applicants. And they're all addressing whether the 1182H waiver can apply to grounds of inadmissibility in cancellation of removal. And the board and the courts found that no, it does not. Um, and they noted, although not addressing the arguments that petitioners brought up, they noted that Congress specified a domestic violence waiver for domestic violence grounds removability. And if Congress intended a greater waiver of inadmissibility, Congress would have written such into the statute, but it did not. It, it chose to use 1227A7. Um, and I really don't have more arguments than that. Um, if the court has any questions. One of the best things about an advocate is, one of the best things about being a good advocate is that when you've finished saying your piece, you don't have to keep talking. It's a great thing. Well, thank you very much. You've done a fine job. Do you want to add anything further? No, just to set the only issue before the court. Thank you very much. All right. Thank you, Your Honors. And thank you, counsel. Thank you. I would like to start by addressing Rodriguez-Benitez versus Holder again. And, um, what my colleague said, um, is true that it's, it's addressed in a very short paragraph. Um, and as I said before in this paragraph, um, the look at, it did not address issues raised by many accepted rules of statutory interpretation. The first is the rule of last antecedent. Um, the court did not look at the language of 1229B1C, um, and the breakdown of that, um, regarding the modifying phrase of paragraph five. Further, the court in the Fifth Circuit, um, did not view the fact that the, um, that 1229BB5 would render part of the statute meaningless. And so those are two, two points at which the Fifth Circuit did not take into account accepted rules of statutory interpretation. Counsel? Yes. I have a quick question for you. Um, my understanding is that your, that your client's contention with respect to the controlled substance violation is that the drugs, if you will, found in his apartment were not his, correct? So that is the factual contention. However, he did accept a plea deal, um, before the, um, Oregon court. Um, and part of that had to do with the, where his children were at that point in a, um, relief on is his previous counsel's failure to advise him of the immigration consequences linked to having a controlled substance conviction. I understand, I understand that, but he is not saying that the domestic violence that he suffered led him to use or possess drugs. Your Honor, the domestic violence... Can I get a yes or no to that? He is, can you restate the question? Sorry. He, he, his defense on the drug charge is that it was the abusive spouse's drugs, not his, correct? Yes. He is not saying in this context that the abuse he suffered forced him to use or possess drugs. Yes, but I would add that, but for the, um, abuser's, you know, situation in his life, he would not have been, uh, charged with possession of methamphetamine. Um, and I see that I've run over time. Um, so I, if, if there's any other questions, I'm, I'm happy to address them. Sure. Thank you. Let me just say, as long as one of my colleagues is asking questions, um, you need more time, uh, Judge Hawkins. Yes. I have no more questions. Okay. Uh, Judge Hawkins, do you have additional questions? I have no questions. All right. Well, we thank, uh, both counsel. You've done a fine job. I, I think the two of you ought to get together for a nice dinner and talk about this. This Thank you both for your fine arguments. The case is submitted and the court stands adjourned for the day and we will wait to be put into the roving room.
judges: Fisher, Hawkins, M. Smith